Michael W. Carmel (#007356)
MICHAEL W. CARMEL LTD.
80 E. Columbus Ave.
Phoenix, Arizona 85012
Telephone: (602) 264-4965
Fax: (602) 277-0144
michael@mcarmellaw.com

Proposed Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| PHOENIX HELIPARTS INC., | Case No. 2:15-bk-12003-DPC |
| Debtor. | **MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND SERVICE PROVIDERS**<br><br>Hearing Date: Not Yet Set<br>Hearing Time: Not Yet Set |

Pursuant to Sections 105(a), 363(b), 364, 1107(a), and 1108 of the Bankruptcy Code, Phoenix Heliparts Inc. ("Debtor"), by and through its proposed counsel, hereby submits this Motion requesting that the Court enter an order authorizing, but not directing, Debtor to pay the pre-petition fixed, liquidated, and undisputed claims of certain critical vendors and service providers, subject to the conditions described herein. Debtor also requests that the Court authorize, but not direct, all applicable banks and financial institutions to honor all related checks and electronic payment requests authorized pursuant to this Motion provided that sufficient funds are available in the applicable accounts to make the payments.

Debtor seeks immediate relief as set forth herein in order to avoid immediate and irreparable harm notwithstanding Federal Rule of Bankruptcy Procedure 6003, and further seeks waiver of any stay as provided by Federal Rule of Bankruptcy Procedure 6004(h).

This Motion is supported by: (i) the following Memorandum of Points and Authorities; (ii) the *Declaration of Andy Gutierrez in Support of First Day Motions and Applications* (the

"Declaration") filed concurrently herewith; and (iii) the entire record before the Court in this chapter 11 proceeding.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE.

1. On September 18, 2015 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is authorized to operate its businesses as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Debtor is an Arizona corporation with its principal operations and location of principal assets in Mesa, Arizona. Accordingly, venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND.

4. Debtor is primarily engaged in providing maintenance services, parts sales, engineering, supplement type certification issues, avionics, and structural repairs for aircraft. Debtor specializes in MD Helicopters (particularly the MD 500 and all variants thereof).

5. Debtor's customer base is worldwide, and includes government agencies and private companies such as Boeing, the City and County of Honolulu, the U.S. Department of State, and the Republic of South Korea Army. Debtor operates primarily from its location in Mesa, Arizona, which is where the corporate office resides. A satellite office in Hawaii also provides services there.

6. Debtor's business was founded in 2003 by Tina and Darin Cannon, working out of a garage in Mesa, Arizona. Over the last twelve years, Debtor has grown into a successful business with more than forty employees and a significant customer base.

7. Debtor has five active contracts to provide ongoing services on, and parts for, various aircraft. The majority of aircraft serviced by pursuant to Debtor's active contracts are owned by military and paramilitary agencies, who use them for air rescue, firefighting, and

police efforts. Debtor's ability to continue to provide its services and parts for these aircraft is critical to protect human lives.

8. Further details regarding the Debtor's businesses and reasons for seeking relief under chapter 11 are contained in the Declaration, which is hereby incorporated by reference.

A. **Debtor's Critical Vendors.**

9. In the ordinary course of its operations, Debtor relies on numerous suppliers, service providers, and vendors for the delivery of goods and/or services. Critical vendors identified on Exhibit A (the "Critical Vendors") supply essential goods and services without which Debtor's business would suffer serious disruption (the "Critical Goods and Service").

10. Though Debtor relies on many vendors to operate its business, Debtor has identified those goods and services absolutely essential to its continued operations. Based on these vendors, Debtor estimates that having authority to pay up to $740,661.76 in pre-petition critical trade claims (part of which, based on Debtor's best estimates, would likely qualify for administrative expense priority under Section 503(b)(9) of the Bankruptcy Code) will ensure that it can perform on its customer commitments (the "Critical Vendor Claims").

11. Debtor has three primary contracts for the repair and service of various aircraft. A substantial portion of Debtor's revenue is derived from its ability to perform under these contracts. The Critical Vendors supply many of the parts and services necessary for Debtor to perform under these contracts. In certain instances, the Critical Vendor Claims include tax obligations that must be satisfied in order for Debtor to continue operating.

12. To ensure that Debtor's liquidity is preserved as it transitions into chapter 11, the *quid pro quo* for Debtor's payment of a Critical Vendor Claim will be the applicable Critical Vendors' commitment to provide trade credit consistent with historical practices. Except in rare and exigent circumstances, Debtor will not pay any prepetition obligation pursuant to the relief requested herein without such Critical Vendor's agreement to provide goods or services on terms consistent with past practice.

13. Debtor has carefully reviewed and analyzed its books and records, contracts and supply agreements, and historic operational needs to determine which business relationships

and/or suppliers of goods and services are most critical to its operations. If the Critical Vendors do not receive payment on account of their Critical Vendor Claims, the Critical Vendors will likely terminate or disrupt the services they provide to Debtor. The termination or disruption of these goods and/or services will result in material harm to Debtor and its estate. Debtor's business operations and the value of its enterprise are directly dependent on the continued provision of goods and services to Debtor's clients. Payment of the Critical Vendor Claims will permit Debtor to deliver the service and quality upon which its clients rely and expect.

### B. Conditions to Payment of Critical Vendor Claims.

14. Debtor requests authorization to pay all, or a portion, of the Critical Vendor Claims as determined by Debtor in its sole discretion in order to continue receiving the vital goods and services provided by the Critical Vendors.

15. To ensure that the Critical Vendors uphold their commitment to providing continued goods and/or services, Debtor proposes that it be authorized, in its sole discretion, to send a letter enclosing a copy of the order granting this Motion and payment to the Critical Vendors, containing the following terms:

  a. The amount of such Critical Vendor's estimated Critical Vendor Claims;

  b. That by acceptance of payment for its Critical Vendor Claims, the Critical Vendor agrees to the terms of the order granting this Motion;

  c. The contract terms between such Critical Vendor and Debtor, or such other terms as the Critical Vendors and Debtor may agree, and the Critical Vendor's agreement to provide goods and/or services to Debtor based upon these terms;

  d. The Critical Vendor's agreement to take whatever actions are necessary to remove any lien that it might have obtained or placed on Debtor's property;

  e. The Critical Vendor's acknowledgment that it has reviewed the terms and provisions of the Critical Vendor Order and consents to be bound thereby; and

  f. The Critical Vendor's agreement that it will not separately seek payment for reclamation claims outside the terms of the Critical Vendor Order.

16. Once agreed to and accepted by a Critical Vendor, such letter shall be referred to herein as a "<u>Vendor Agreement</u>."

### III. <u>LEGAL ARGUMENT.</u>

The payment of the Critical Vendor Claims can and should be authorized pursuant to Sections 105(a) of the Bankruptcy Code and the "necessity of payment doctrine." Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a); *see also In re Saxman*, 325 F.3d 1168, 1174 (9th Cir. 2003) (under 105(a), "a court may exercise its equitable power . . . as a means to fulfill some specific Code provision"). Thus, Section 105(a) essentially codifies the Court's equitable powers.

Numerous courts have used their Section 105 equitable powers under the "necessity of payment doctrine" to authorize payment of a debtor's pre-petition obligations. *See, e.g., Miltenberger*, 106 U.S. 286, 311-12 (1882); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 17 (Bankr. M.D. Fla. 2005); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989). In order to invoke the "necessity of payment doctrine," Debtor must show that "the payment is necessary to avert a serious threat to the Chapter 11 process." *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991); *accord In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993); *In re Gulf Air, Inc.*, 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989). Such relief generally has been granted where, as here, non-payment would trigger a withholding of goods or services essential to a debtor's business. *See Just for Feet*, 242 B.R. 821, 826 (D. Del. 1999); *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001).

Courts authorize such relief if: (i) payments are necessary to a debtor's reorganization; (ii) a sound business justification exists in that the critical vendors refuse to continue to do business with the debtor absent payment; and (iii) disfavored creditors are at least as well off as they would have been absent any critical vendor payments. *See Tropical Sportswear*, 320 B.R. at 17; *In re Kmart Corp.*, 359 F.3d 866, 872 (7th Cir. 2004) ("If paying the critical vendors would enable a successful reorganization and make even the disfavored creditors better off, then

5
Case 2:15-bk-12003-DPC    Doc 10    Filed 09/18/15    Entered 09/18/15 16:34:08    Desc
Main Document    Page 5 of 10

all creditors favor payment whether or not they are designated as 'critical.'"). Without question, the payment of the Critical Vendor Claims is necessary here.

If Debtor fails to pay the Critical Vendor Claims, Debtor will lose valuable resources required to operate its business, including but not limited to, goods and services Debtor requires to perform under exclusive and confidential military contracts. In the absence of payment, these Critical Vendors will cease providing Debtor with their vital services and/or goods. Without the services and/or goods provided by the Critical Vendors, Debtor would be unable to operate its business. Consequently, the failure to honor outstanding commitments to Critical Vendors would have an immediate and material adverse impact on Debtor's ability to continue to operate, severely limiting the prospects for Debtor's reorganization and reducing potential payments to all creditors. The immediate payment of the Critical Vendor Claims is crucial to the continued operation of Debtor's business, and preservation of Debtor's going-concern value. As such, the payment of the Critical Vendor Claims will provide an ongoing benefit for creditors generally. Pursuant to Section 105(a) of the Bankruptcy Code and the "necessity of payment doctrine," the Court can and should authorize Debtor to pay the Critical Vendor Claims immediately.

Finally, by this Motion, Debtor seeks authorization to direct its banks and other financial institutions (the "<u>Banks</u>") to process, honor, and pay checks or electronic transfers issued by Debtor in connection with the authorized Critical Vendor Claims. Debtor requests an order stating that in processing, honoring, and paying such obligations, the Banks may rely on the representations of Debtor regarding which checks or electronic transfers should be honored.

Due to the exigencies discussed herein, Debtor seeks immediate relief pursuant to this Motion notwithstanding Federal Rule of Bankruptcy Procedure 6003. Without the requested relief, Debtor will very likely suffer immediate and irreparable harm as its ability to obtain critical services and goods from the Critical Vendors is crucial to its ongoing business operations. For the same reasons, Debtor also requests that the Court waive any stay under Federal Rule of Bankruptcy Procedure 6004(h).

WHEREFORE, Debtor respectfully requests that the Court enter an order:

A. Authorizing, but not directing, Debtor to enter into Vendor Agreements with Critical Vendors and to pay all, or a portion, of the Critical Vendor Claims as determined by Debtor in its sole discretion;

B. Authorizing the Banks to receive, process, honor, and pay any and all checks or other transfers drawn on Debtor's accounts in connection with the Critical Vendor Claims, as directed by Debtor, provided that sufficient funds are available in the relevant accounts;

C. Granting the relief requested herein immediately notwithstanding Federal Rule of Bankruptcy Procedure 6003, and waiving any stay under Federal Rule of Bankruptcy Procedure 6004(h); and

D. Granting such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 18th day of September, 2015.

MICHAEL W. CARMEL LTD.

By: /s/ Michael W. Carmel
Michael W. Carmel
80 E. Columbus Ave.
Phoenix, Arizona 85012
Proposed Attorneys for Debtor

**EXHIBIT A**

Aero Metals
3920 Sandstone Drive
El Dorado Hills, CA 95762
**Amount Owed**: $141,064.00

Aerospace Filtration Systems, Inc.
17891 Chesterfield Airport Road
Chesterfield, MO 63005
**Amount Owed:** $9,129.00

AVIALL
P.O. Box 842267
Dallas, TX 75284-2267
**Amount Owed:** $37,867.00

Bank Direct Capital Finance
P.O. Box 660448
Dallas, TX 75266-0448
**Amount Owed:** $10,167.15

Brown Helicopter
10100 Aileron Avenue
Pensacola, FL 32506
**Amount Owed:** $6,000.00

Chase Credit Card
P.O. Box 15298
Wilmington, DE 19850-5298
**Amount Owed:** $25,000.00

Communication Concepts, Inc.
7655 E. Redfield Road, Suite 2
Scottsdale, AZ 85260
**Amount Owed:** $14,000.00

Dallas Avionics
2525 Santa Anna Avenue
Dallas, TX 75228
**Amount Owed:** $20,000.00

Dart Aeropace
1270 Aberdeen Street
Hawkesbury, Ontario, Canada K6A 1K7
**Amount Owed:** $5,000.00

Michael W. Carmel Ltd.
80 E. Columbus Ave., Phoenix, Arizona 85012
Telephone: (602) 264-4965

Datco Media, LLC
2264 Edge Ridge Court
Henderson, NV 89052
**Amount Owed:** $2,095.00

Diamond J. Inc.
P.O. Box 9526
Wichita, KS 67277
**Amount Owed:** $10,665.00

Federal Express
P.O. Box 7221
Pasadena, CA 91109-7321
**Amount Owed:** $1,670.20

Hawaii Department of Taxation
830 Punchbowl Street
Honolulu, Hawaii 96813-5094
**Amount Owed:** $70,725.62

Helicopter Technology Company
12902 South Broadway
Los Angeles, CA 90061
**Amount Owed:** $20,000.00

Landmark Aviation
98 Kapalulu Place
Honolulu, HI 96819
**Amount Owed:** $6,878.17

Precision Aviation Group
495 Lake Mirror Road, Building 800
Atlanta, GA 30349
**Amount Owed:** $255,450.20

Prime Turbines
1615 Diplomat Drive, Suite 120
Carrollton, TX 75006
**Amount Owed:** $18,710.13

RO Wing Aviation
1115 Avenida Acaso, Unit 1
Camarillo, CA 93012
**Amount Owed:** $50,020.90

Michael W. Carmel Ltd.
80 E. Columbus Ave., Phoenix, Arizona 85012
Telephone: (602) 264-4965

| | |
|---|---|
| 1 | RSG Products, Inc.<br>P.O. Box 163976 |
| 2 | Fort Worth, TX 76161-3976<br>**Amount Owed:** $29,664.93 |
| 3 | |
| 4 | Talon Test Labs Inc.<br>650 Via Alondra |
| 5 | Camarillo, CA 93012<br>**Amount Owed:** $2,054.46 |
| 6 | |
| 7 | Travis Pullins<br>9531 South Shafer Drive |
| 8 | Tempe, AZ 85284<br>**Amount Owed:** $4,500.00 |

Michael W. Carmel Ltd.
80 E. Columbus Ave., Phoenix, Arizona 85012
Telephone: (602) 264-4965